IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 09-00257-WS-N |
| ) | |
| DAVID CLIFTON FULFORD, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter comes before the Court on remand with instructions from the U.S. Court of Appeals for the Eleventh Circuit.  (*See* doc. 50.)  The parties have submitted supplemental briefs on the issue that the appellate court instructed this Court to decide on remand, and that issue is now ripe for disposition.[1]

**I.     Relevant Background.**

On January 26, 2010, defendant David Clifton Fulford entered a guilty plea to one count of  possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and two counts of knowing receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) & (b).  (*See* doc. 24.)  Fulford was sentenced to 120 months as to the possession count and 210 months as to each of receipt/distribution counts, said terms to run concurrently.  (*See* doc. 41.)

A critical sentencing issue concerned the application of U.S.S.G. § 2G2.2(b)(3)(C) to Fulford's circumstances.  That guideline provides for a 5-level enhancement for trafficking in material depicting sexual exploitation of a minor "[i]f the offense involved … [d]istribution to a minor."  *Id.*  The Presentence Investigation Report recommended that a § 2G2.2(b)(3)(C)

---

[1]     No party identified any new, further or different evidence on that issue than the evidence previously submitted via live testimony and written exhibits.  The Court having already received all evidence that the parties wish to submit concerning the persons with whom defendant was engaged in online chats, no evidentiary hearing is necessary at this time.

enhancement be imposed.  (*See* doc. 29, ¶ 34.)[2]  Fulford objected to this enhancement, reasoning that "there is no strict proof as to with whom the Defendant was actually chatting," such that the Government could not establish that he had chatted with (or distributed images of child pornography to) a minor.  (Doc. 26, at 1.)

     A sentencing hearing was convened before the undersigned on April 27, 2010.  At that time, the Government presented testimony of Wes Anthony, a Special Agent with the U.S. Immigration and Customs Enforcement, on the question of whether Fulford had distributed child pornography to a minor.  Special Agent Anthony testified about certain "chat logs" retrieved during investigation of Fulford's conduct, as well as the Government's efforts to identify the persons with whom defendant had chatted and shared images of child pornography.  To that end, Special Agent Anthony indicated that law enforcement had been "able to identify two valid investigative leads" concerning people with whom Fulford had chatted.  (Doc. 48, at 14.)  On cross-examination, however, he acknowledged that, as to those leads, "our investigation has revealed that it appears that what the Defendant believed to be minors were actually adults."  (*Id.* at 20.)  Special Agent Anthony elaborated that ICE agents had "interviewed two white males, one male at each respective household, and they admitted to posing as adolescent girls in these chat rooms in order to receive pictures," and clarified that "[t]hese were not law enforcement officers" who had been chatting with Fulford.  (*Id.* at 23.)  The testimony left no doubt that this investigation did not involve undercover officers posing as minors in chat rooms to interact with Fulford about child pornography.  (*Id.* at 23-24.)

     The Government's position at the sentencing hearing was that it did not matter whether the persons in the chat rooms to whom Fulford distributed child pornography were actually minors or not, so long as he believed that they were.[3]  Defendant objected that the definition of

---

     [2]     The stated factual predicate for this recommendation was that "[t]he investigation also support[s] that Fulford entered in 'chat rooms' with children, and distributed to them images of child pornography."  (Doc. 29, ¶ 26.)

     [3]     The Government also asserted that a five-level enhancement under § 2G2.2(b)(3) was appropriate in any event because, even if Fulford was not distributing images to a minor for purposes of subsection (C), he was distributing them "for the receipt, or expectation of receipt, of a thing of value," pursuant to subsection (B).  According to the Government, then, "either under the minor, distribution to a minor or under the bartering guideline that … five-level enhancement is appropriate."  (Doc. 48, at 27.)  The Court expressly declined to consider the subsection (B) (Continued)

"minor" in the application notes of U.S.S.G. § 2G2.2 is confined to individuals below the age of 18 or law enforcement officers posing as such, without allowing for "minor" status based on a defendant's subjective beliefs of the recipients' ages.

After hearing the testimony and argument of counsel, the Court continued the sentencing hearing to allow briefing on the § 2G2.2(b)(3)(C) issue.  In its memorandum, the Government acknowledged that, aside from the two adult males chatting with Fulford who had misrepresented themselves as adolescent females in hopes that he would send them child pornography, "[n]one of the other users have been positively identified." (Doc. 33, at 2.) Nonetheless, the Government maintained that the § 2G2.2(b)(3)(C) enhancement was appropriate based on a chat transcript dated June 29, 2009, in which Fulford chatted with (and sent images of child pornography to) a person whose user name was "Dawn." (Doc. 33, Exh. 1.) "Dawn" has never been located or identified.  No one knows for sure whether Dawn is a minor, or simply an adult trolling for child pornography by posing as a minor (like the two persons identified by Special Agent Anthony).  The evidence from that chat transcript concerning Dawn's age consists of the following: (i) Dawn sent Fulford images depicting a red-haired minor female, which were purportedly photographs of herself; and (ii) Dawn indicated in the chat that she was 13 years old, that she lived at home, and that her mother would not allow her to have a cell phone yet. (*Id.*)  On this showing, the Government urged the Court to apply the § 2G2.2(b)(3)(C) enhancement because the transcript showed that Fulford had indeed distributed child pornography to a minor and, alternatively, that he at least distributed such images to someone he believed was a minor.  Defendant's position was that the enhancement did not apply because the evidence did not establish that Dawn was a minor, and that mere intent or belief on Fulford's part that he was sending images to a minor does not suffice to trigger the enhancement.

On June 4, 2010, the sentencing hearing resumed.  Upon receiving additional argument, the Court made findings of fact by a preponderance of the evidence that Fulford "communicated

---

argument, on the ground that the Government had failed to object to the PSR's omission of a five-level enhancement for distribution for the receipt or expectation of receipt of a thing of value, such that neither defendant nor the Court were on notice of the Government's intent to seek that enhancement at sentencing. (*Id.* at 32-33.)  The undersigned opined at the hearing that "I don't think you get to argue that at this point," and that the sole issue "before the Court is whether the five-level enhancement for distribution to a minor is appropriate." (*Id.* at 33.)

by computer with an individual who held herself out to be a 13-year-old female," that Fulford "believed that he was communicating with a 13-year-old female," and that Fulford "not only communicated but transmitted child pornography to this individual." (Doc. 48-1, at 15.) The Court also announced its interpretation of § 2G2.2(b)(3)(C), with reference to the sparse available case law (and even then mostly by analogy), concluding that the enhancement was available as long as Fulford distributed images of child pornography to someone he believed to be a minor. Because the above-described findings of fact plainly established such intent, the Court overruled Fulford's objection and applied the five-level enhancement under § 2G2.2(b)(3)(C). Having resolved that issue, the Court found that Fulford's adjusted offense level was 37 and that his criminal history category was I, yielding a guideline range of 210 to 262 months. The Court sentenced Fulford to a low-end sentence of 210 months. (*Id.* at 65.)[4]

      Fulford appealed. On November 14, 2011, the Eleventh Circuit vacated the judgment. The panel held that "Fulford's belief that Dawn was a minor at the time he sent her the child pornography is not enough to justify application of the § 2G2.2(b)(3)(C) enhancement. The government must prove that Dawn, whoever he or she is, was actually under the age of 18 years at the time." *United States v. Fulford*, 662 F.3d 1174, 1181 (11th Cir. 2011). Accordingly, the Eleventh Circuit remanded for this Court "to make a finding regarding whether the government has proven by a preponderance of the evidence that at the time Fulford sent the child pornography Dawn was under 18 years of age." *Id.* Following remand, the Court has received supplemental briefing from the parties on this issue. (*See* docs. 53, 54.) They do not submit or identify any new, different or additional evidence; rather, the parties are content to have the Court resolve this issue using facts already of record.

---

[4] The § 2G2.2(b)(3)(C) enhancement loomed large in the sentencing proceedings, and there was no direct precedent on which to rely in resolving it. Anticipating defendant's appeal, the Government asked at the hearing whether the Court would state on the record that the 210-month sentence would have been imposed even if the guidelines had been calculated incorrectly. The Court declined, stating, "I certainly will welcome any guidance from the Eleventh Circuit as to that level, and we will act accordingly." (*Id.* at 69.) Implicit in these remarks was that if the five-level § 2G2.2(b)(3)(C) enhancement did not apply, the Court would not have sentenced Fulford to 210 months in prison.

**II.     Analysis.**

"The burden of establishing evidence of the facts necessary to support a sentencing enhancement falls on the government, and it must do so by a preponderance of the evidence." *United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007) (citation omitted); *see also United States v. Belfast*, 611 F.3d 783, 823 (11th Cir. 2010) ("The government bears the burden of proving the applicability of a guideline section that would enhance a defendant's offense level."). "It is the district court's duty to ensure that the Government carries this burden by establishing a sufficient and reliable basis for its request for an enhancement." *Perez-Oliveros*, 479 F.3d at 783 (citation omitted); *see generally United States v. Douglas*, 489 F.3d 1117, 1129 (11th Cir. 2007) (reaffirming that district courts may impose "guidelines enhancements based on facts found by the judge by a preponderance of the evidence").

Again, the narrow inquiry with which this Court is tasked on remand is to make a finding whether the Government has proven by a preponderance of the evidence that, when Fulford sent child pornography to "Dawn" during an Internet chat on June 29, 2009, Dawn was under 18 years of age.  Upon careful consideration of the parties' post-remand submissions, as well as the evidence before it, the undersigned concludes that the Government has not met this burden.  We know nothing about Dawn.  Who is she?  Is her name really Dawn?  Is Dawn male or female?  What age is he or she?  Where does he or she live?  No one knows.  In fact, during the continuation of the sentencing hearing on June 4, 2010, the Government candidly acknowledged that Fulford's chat partners "may be minors, but the point is we don't know that. … [F]actually we don't know.  We haven't identified them."  (Doc. 48-1, at 4.)

What we do know is that the Internet is a medium through which people can and routinely do assume fictitious identities.  Some do it to heckle professional athletes or disparage musicians.  Others do it to air unpopular political or social views, thus allowing their voices to be heard from behind a comforting veil of anonymity.[5]  Still others may fabricate a persona on the

---

[5]     Such anonymous Internet speech is not relished by all governments in all contexts.  For example, late last year a top officer within the Russian Interior Ministry called for a ban on Internet anonymity, arguing that Russia should adopt a form of online "face control" to force World Wide Web travelers to register under their real names and addresses.  Nor is it necessarily embraced by the very social networks that profit from such flourishing anonymity.  In a recent panel discussion, a Facebook official opined that Internet anonymity should "go away" and that users should be required to use their real names online.

Web to promote nefarious objectives, such as trying to conceal unlawful activity or endeavoring to defraud or trick other users into providing confidential information, sending money, or distributing pornographic images.  And, of course, law enforcement agents regularly go undercover on the Internet to identify and investigate criminal activity.  The point is not whether, normatively speaking, Internet anonymity is inherently good or bad.  The point is that it is pervasive.  As a practical reality, surfing the Internet is akin to attending a masquerade ball in the land of Oz on Halloween.  No one is who they seem to be.

This truth is obvious not only from everyday interactions with technology in the 21st century, but also from the record as developed in this case.  Defendant did not use the name "David Fulford" in the chats in which he distributed images of child pornography; rather, he went by the handle "b_ooh_oo."  (Doc. 33, Exh. 1.)  We cannot say that Dawn's real name was Dawn any more than we can say that Fulford's real name is b_ooh_oo.  Furthermore, at sentencing, the Government's case agent testified that Fulford's only two chat partners to have been positively identified were adult males, who had posed as minor females during the chats.  Why would the chat partners disguise themselves in this manner?  First of all, trading in child pornography on the Internet is a felony, punishable by stiff prison sentences.  Given that well-publicized fact, one would expect Internet users engaged in such clandestine activities to cover their tracks, such as by assuming fictitious identities, as a simple matter of self-preservation to lessen the likelihood of being caught.  Second, some purveyors of child pornography may prefer (whether for sexual gratification or role-playing or any other reason) to share images with minor females rather than other adults.  Knowing this, certain users of the Internet may pretend to be young girls in order to extract the desired pornographic materials from chat partners more easily than they could if they admitted their true demographic traits.  We know this happened in this very case.  With respect to Fulford's two identified chat partners, the case agent testified that they both "admitted to posing as adolescent girls in these chat rooms in order to receive pictures."

Against this factual backdrop, it would not be prudent or appropriate to place meaningful stock in the self-identification of "Dawn" during the chat with Fulford.  To be sure, "Dawn" said in the chat that he or she was a 13-year old female, and sent Fulford photos, purportedly of herself, that generally match that description.  But there is little reason to trust the veracity of these representations, and every reason to be skeptical.  Accordingly, the Court will not blithely

assume – as the Government would – that "Dawn" was really the 13-year old girl she held herself out to be during the Internet chat in which Fulford distributed images of child pornography to her.  There is no other evidence that "Dawn" was under 18 years of age.  As noted, the Government has conceded that it does not know Dawn's identity.  Its own evidence reveals the propensity of Internet users desirous of images of child pornography to adopt phony identities to dupe others into sharing illicit pictures.  Taken as a whole, the evidence does not show it to be more likely than not that Dawn was really a minor when Fulford transmitted child pornography to him or her.[6]

On this showing, the Court finds that the Government has not met its burden of proof by a preponderance of the evidence that at the time Fulford sent the child pornography Dawn was under 18 years of age.  Therefore, the 5-level enhancement under U.S.S.G. § 2G2.2(b)(3)(C) for distribution to a minor is not available.  Pursuant to the Eleventh Circuit's instructions on remand, this finding obliges this Court to "resentence Fulford without the § 2G2.2(b)(3)(C) enhancement."  *Fulford*, 662 F.3d at 1181-82.[7]

---

[6]    In so concluding , the Court has considered the case authorities cited by the Government.  All of these decisions appear to have been before the appeals court on "plain error" or "clear error" review of a district court's factual finding at sentencing.  *See, e.g., United States v. Wainwright*, 509 F.3d 812, 815 (7th Cir. 2007) ("Given this limited review, we cannot say that the district court committed plain error by relying on a screen name as evidence that at least one of the recipients was, in fact, under eighteen."); *United States v. Hansel*, 524 F.3d 841, 847 (8th Cir. 2008) ("Although it is possible that the recipient misrepresented her age, … there was evidence before the district court to support the finding that the recipient was a minor and we are not convinced that the district court made a mistake in so finding.").  To say that it was not "clear error" or "plain error" for a district court to make a finding of fact that a recipient of child pornography was a minor based on information provided by the recipient in chat logs is not to say that such a finding is mandatory.  Nor do these authorities suggest that it would be error for a district court to determine – based on the facts of a particular case – that the recipient's self-identification in a chat log as a minor, without more, is not sufficient to satisfy the Government's burden of proof as to the availability of a § 2G2.2(b)(3)(C) enhancement.

[7]    In a footnote, the Government hints at attempting to resurrect its argument that, even if § 2G2.2(b)(3)(C) does not apply, a five-level enhancement remains appropriate under § 2G2.2(b)(3)(B) because Fulford was trading or bartering child pornography.  But this Court has previously ruled that the availability of § 2G2.2(b)(3)(B) was not an issue properly joined in this case.  The Government did not appeal that ruling.  *See Fulford*, 662 F.3d at 1177 n.2 ("The district court ruled that the government had waived that argument by failing to object to the PSR's failure to recommend a § 2G2.2(b)(3)(B) enhancement.  The government has not appealed that waiver ruling.").  The Eleventh Circuit's remand was not an invitation to the Government to (Continued)

### III.     Conclusion.

The parties are **ordered**, on or before **March 21, 2012**, to file notices setting forth their respective positions, supported by authority as appropriate, as to whether a new sentencing hearing is necessary in this case, or whether the Court may use the recalculated guidelines to resentence Fulford without a hearing. *Compare United States v. Tamayo*, 80 F.3d 1514, 1519 (11th Cir. 1996) ("reconsideration or correction of a portion of the sentence can be remedied on remand, provided the modification does not make the sentence more onerous, but the whole [sentencing] process need not start anew") (citation and internal quotation marks omitted) *with United States v. Taylor*, 11 F.3d 149, 151 (11th Cir. 1994) ("the defendant's right to be present extends to resentencing when an original sentencing package is vacated in its entirety on appeal and a case is remanded for resentencing"). If there is no right to a full resentencing hearing, or if Fulford waives his right to such a hearing and to allocute at same,[8] then the Court will resentence Fulford on the existing record, based on a revised total offense level of 32 and a criminal history category of I, which yields a guideline range of 121 to 151 months.

DONE and ORDERED this 7th day of March, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

renew its § 2G2.2(b)(3)(B) argument, which the Court has already deemed not to be part of this case.

[8]     It bears emphasis that a resentencing hearing may cause substantial disruption to Fulford's living situation. Among other relevant considerations, presence at resentencing would remove Fulford from his current place of incarceration with no guarantee of return to that facility, much less his present cell; would interrupt his participation in any prison programs; and would require interim housing at various local jail facilities. Defense counsel is instructed to confer with Fulford as to these matters before submitting his statement of position.